FILED
JUN 07 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BARBARA G. DAUVEN, et al.

        Plaintiff,

v.

U.S. BANK NATIONAL ASSOCIATION, et al.

        Defendant.

CV. 09-1471-PK

FINDINGS AND RECOMMENDATION

PAPAK, Judge:

       Plaintiffs Barbara Dauven, Ted Dauven and their daughter, Christiana Dauven, appearing pro se, filed this action alleging various state law claims against U.S. Bancorp, U.S. Bank National Association (collectively, U.S. Bank) and Wells Fargo. Defendants' motion to dismiss and alternative motion to strike (#21) is now before the court. The court should grant defendants' motions, for the reasons set forth below.

Page 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

Shortly after the Dauvens filed this action, this court issued an order to show cause, requiring that the plaintiffs address the court's subject matter jurisdiction. (Order to Show Cause, #9.) The Dauvens timely amended their complaint and now allege diversity as the basis for this court's jurisdiction. The amended complaint states that the Dauvens are residents of Oregon. (Am. Compl. ¶ 24-26.) It alleges that the U.S. Bank defendants are Delaware corporations with headquarters in Minnesota. *Id.* at ¶ 21. It further alleges that Wells Fargo is a Delaware corporation with headquarters in California. *Id.* Finally, it alleges that the amount in controversy exceeds $75,000. *Id.* at ¶ 23. Plaintiffs seek compensatory and punitive damages and attorney fees for each of their claims.

The amended complaint concerns a dispute over property that the Dauvens lived in as tenants. The property owner failed to pay the mortgage and U.S. Bank, the lender, foreclosed in July 2009. *Id.* at ¶ 51. The complaint alleges that Wells Fargo served as the loan servicer. *Id.* at ¶ 6.

The Dauvens allege that, as long-term tenants, under Oregon law they had a "priority right to purchase" the property. *Id.* at ¶ 53. The complaint, however, also admits that the owner offered to sell the property to the Dauvens but the Dauvens rejected the offer because the price was too high. *Id.* at ¶ 43.

The complaint describes efforts to evict the Dauvens from the property following the foreclosure. It alleges that they received a demand to vacate in July 2009 and a defective 90-day notice to vacate in August 2009. *Id.* at ¶ 57, 59. In December, U.S. Bank initiated a forcible entry and detainer (FED) proceeding. (Am. Compl. at ¶ 67; Smith Decl., #13, Ex. 1.) The Dauvens represented themselves in that proceeding. (Am. Compl. at ¶67, 71.) In December

Page 2 – FINDINGS AND RECOMMENDATION

2009, the state court ruled in favor of U.S. Bank. (Am. Compl. at ¶ 75; Smith Decl., #13, Ex. 2.)

The Dauvens pursue claims for abuse of process and "willful and wanton misconduct" (First and Second Causes of Action)[1] arising out of the FED proceeding. The complaint alleges that U.S. Bank and Bancorp "have used legal processes not for their proper purposes, but to accomplish purposes for which the processes were not designed." (Am. Compl. at ¶ 81.) In addition, the complaint alleges that the defendants "had a duty of care in their dealings and actions regarding Plaintiffs" and that their actions breached that duty "with malicious intent to harm Plaintiffs." *Id.* at ¶ 88.

The Dauvens also pursue two claims for trespass and a claim for outrageous conduct against U.S. Bank, arising out of efforts to vacate them from the property (Third, Fourth and Fifth Causes of Action). The complaint alleges that, on two separate occasions in November 2009, a man dressed in a police uniform arrived at the Dauvens' residence and banged on the door while Christiana Dauven, who is chronically ill, was home alone. *Id.* at ¶ 61. It also alleges that a man dressed in a police uniform who identified himself as a state officer visited the Dauven residence in early December, demanded that the Dauvens vacate and threatened them with arrest if they did not comply. *Id.* at ¶ 64.

The complaint further alleges the men acted on behalf of U.S. Bank, which "induced" them to give the impression that they were police officers, or to impersonate police officers. *Id.* at ¶ 93, 100, 106. With regard to the man who identified himself as a state officer, the complaint alleges that the officer "believed he represented the owner" and "knew information that he could only have received through the owner or the owner's attorney." *Id.* at ¶ 66. It further alleges that the man refused to show a badge or otherwise identify himself. *Id.* at ¶ 65.

---

1  The complaint lists causes of action, as opposed to claims for relief. I use the complaint's terminology for the sake of clarity.

Page 3 – FINDINGS AND RECOMMENDATION

Finally, Ted Dauven pursues claims for false imprisonment and battery (Sixth and Seventh Causes of Action) against U.S. Bank arising out of an altercation that took place during the December 2009 demand to vacate. The complaint alleges that, when Ted Dauven attempted to get the license plate number from the man who identified himself as a state officer, the man stopped him by touching him and ordering him to remain on the porch. *Id.* at ¶ 65.

## LEGAL STANDARDS

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) can be "either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Under either form of attack, courts presume that a case "lies outside [its] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Assoc. of Am. Med. Colleges v. United States*, 217 F.3d 770, 778-779 (9th Cir. 2000) (citation omitted). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual challenge, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment... It also need not presume the truthfulness of the plaintiffs' allegations." *White*, 227 F.3d at 1242 (citations omitted).

"Defective allegations of jurisdiction may be amended, upon terms, in trial or appellate courts." 28 U.S.C. § 1653. "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by amendment." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n.6 (9th Cir. 2002).

### II. Motion to Strike

Federal Civil Procedure Rule 12(f) provides that the district courts "may strike from a

Page 4 – FINDINGS AND RECOMMENDATION

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" on their own initiative or pursuant to a party's motion. Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). The disposition of a motion to strike is within the discretion of the district court. *See Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990).

### III.  Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), citing *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

In ruling on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Keams v. Tempe Tech. Inst.*, 39 F.3d 222, 224 (9th Cir. 1994). Moreover, the "court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In cases involving a plaintiff proceeding *pro se*, courts construe the

Page 5 – FINDINGS AND RECOMMENDATION

pleadings liberally and afford the plaintiff the benefit of any doubt. *See Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 623 (9th Cir. 1988). Thus, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Id.* at 623-624.

## DISCUSSION

I.    **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

    A.    **Amount in Controversy Requirement**

Diversity jurisdiction requires an amount in controversy that exceeds $75,000 exclusive of interest and costs. 28 U.S.C. § 1332(a). "Where the plaintiff originally files in federal court, the amount in controversy alleged in the complaint "controls so long as the claim is made in good faith." *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (citation omitted). Thus, where a plaintiff's allegations meet the amount in controversy requirement, the court should not dismiss unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (citation omitted); *see also Christensen v. Northwest Airlines, Inc.*, 633 F.2d 529, 531 (9th Cir. 1980) (affirming district court's dismissal where the district court held it was legally certain that the plaintiff could not sustain a judgment for $10,000, then the jurisdictional minimum, because the plaintiff suffered only anger and embarrassment as a result of a brief argument with an airline ticket agent). Where a plaintiff seeks actual and punitive damages, the courts consider both in determining the amount in controversy. *See Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943). In addition, if the controlling law authorizes an award of attorney fees, the court may include such fees in the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998).

Here, plaintiffs allege that the amount in controversy is in excess of $75,000. They seek

Page 6 – FINDINGS AND RECOMMENDATION

compensatory and punitive damages as well as attorney fees and costs. They assert in response to defendants' motion that their economic damages arise from "loss of a potential home . . . and present and future prospective economic advantage of home ownership, the planned restoration of the property and provision of an affordable residence." (Pl. Resp. Mem. # 24 at 3.)[2]

I am skeptical of plaintiffs' allegation that the amount in controversy exceeds $75,000. Plaintiffs argue that they suffered economic damages arising from their plan to purchase the house, but their claims are unrelated to those damages. Plaintiffs' abuse of process and willful misconduct claims relate to the FED proceeding, not the sale of the home. Moreover, plaintiffs' damages appear to be minimal in light of the fact that plaintiffs represented themselves in the proceeding and continue to list the home as their address. Plaintiffs' trespass, battery and false imprisonment claims all arise from brief encounters and include no allegations of any physical injury. In addition, plaintiffs allege no basis for an award of attorney fees. *Brookshire v. Johnson*, 274 Or. 19, 21, 544 P.2d 164 (1976) ("[I]n the absence of a contractual or statutory provision a litigant is not entitled to attorney fees.") Finally, as pro se litigants, the plaintiffs are not entitled to attorney fees. *See Parquit Corp. v. Ross*, 273 Or. 900, 902, 543 P.2d 1070 (1975).

Although plaintiffs' punitive damages claim forms part of the amount in controversy, "[p]unitive damages awards that are grossly excessive violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Goddard v. Farmers Ins. Co.*, 344 Or. 232, 251, 179 P.3d 645 (2008) (citation omitted). Courts determine whether punitive damages are "grossly excessive" based on three factors: (1) the reprehensibility of the defendant's misconduct; (2) the disparity between the harm suffered and the punitive damages award; "and

---

2 Plaintiffs filed their response to defendants' motion two days late. As this tardiness does not appear to have prejudiced the defendants, I have read and considered plaintiffs' response.

Page 7 – FINDINGS AND RECOMMENDATION

(3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* (citation omitted).

My skepticism that plaintiffs claims exceed $75,000, however, does not amount to a legal certainty that plaintiffs' claim is actually for less than the jurisdictional amount. Although the compensatory damages appear minimal, plaintiff's pursuit of punitive damages renders their potential award uncertain. I therefore find that plaintiffs have sufficiently pled the amount in controversy.

### B.     Diversity of Citizenship

"A party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A person is a "citizen of a state" for purposes of diversity jurisdiction if the person is a citizen of the United States and the state is his or her domicile, or permanent home, "where [the person] resides with the intention to remain or to which [he or] she intends to return." *Id.* Thus, an allegation that a party is a resident of a state is insufficient to confer diversity jurisdiction because "a person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Id.*

Here, plaintiffs have failed to plead diversity jurisdiction because the complaint merely states that they reside in Oregon. Although plaintiffs contend that the complaint, taken as a whole, conveys that they intend to remain in Oregon, the complaint is nonetheless deficient because it does not indicate that they are citizens of the United States. The plaintiffs can cure this defect upon amendment, however. I therefore find that the court should grant defendants' motion to dismiss for lack of jurisdiction with leave for plaintiffs to amend. Upon amendment, plaintiffs must truthfully allege that they are citizens of the United States and are domiciled in

Page 8 – FINDINGS AND RECOMMENDATION

Oregon, or any other state that is diverse from the defendants.[3]

## II.   Motion to Strike

"A motion to strike may be used to strike the prayer for relief where the relief sought is unavailable as a matter of law." *Chouinard v. Grape Expectations, Inc.*, No. 08-806, 2009 U.S. Dist. LEXIS 2569, at *3 (D. Or. Jan. 12, 2009). Here, as explained above, plaintiffs' prayer for relief seeks attorney fees but plaintiffs have plead only common law causes of action that do not provide for an award of fees. Consequently, the court should grant defendants' motion to strike plaintiffs' claim for attorney fees.

## III.   Motion to Dismiss for Failure to State a Claim

### A.   Claim Preclusion

Under 28 U.S.C. § 1738, federal courts must give the same preclusive effect to state court judgments that the courts in the state from which the judgment emerged would give to the judgment. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Oregon law governing claim preclusion, "[w]here there is an opportunity to litigate the question along the road to the final determination of the action or proceeding, neither party may later litigate the subject or question." *Drews v. EBI Cos.*, 310 Or. 134, 140, 795 P.2d 531 (1990); *see also Perkins v. Conradi*, 153 Or. App. 273, 276, 956 P.2d 1022 (1998) (plaintiff's claims asserting

---

[3] Plaintiffs' response asserts that federal jurisdiction lies because they have alleged a cause of action under the federal Helping Families Save their Homes Act. (Pl.'s Resp. Mem. at 3, 10.) The amended complaint, however, does not include a claim for a violation of the Act. I note, nonetheless, that several courts have found that the Act does not confer a private right of action. *Logan v. United States Bank Nat'l Ass'n*, No. 09-08950, 2010 U.S. Dist. LEXIS 46314, at *20-36 (C.D. Cal. Apr. 12, 2010); *Cook v. One W. Bank FSC*, No. 09-3581, 2009 U.S. Dist. LEXIS 123499, at *3 (E.D. Cal. Dec. 29, 2009). Moreover, "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation," does not confer federal subject matter jurisdiction. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 817 (1986) (citing 28 U. S. C. § 1331).

Page 9 – FINDINGS AND RECOMMENDATION

ownership over a parcel of land were precluded because plaintiff could have addressed the ownership issue in his defense to an FED action and failed to do so). Moreover, the pendency of an appeal does not eliminate a judgment's preclusive effect. *Ron Tonkin Gran Turismo, Inc. v. Wakehouse Motors, Inc.*, 46 Or. App. 199, 207, 611 P.2d 658 (1980).

Here, plaintiffs' abuse of process, wanton misconduct and trespass claims are based in part on allegations that U.S. Bank is not the rightful owner of the property and that the 90-day notice to vacate was improper. Plaintiffs, however, had an opportunity to challenge U.S. Bank's right to possession and the legality of the notice to vacate in their defense to the FED action. I therefore find that plaintiffs' abuse of process, wanton misconduct and trespass claims are precluded to the extent that they rely on allegations relating to the legality of the notice to vacate. The court should accordingly dismiss the abuse of process, wanton misconduct and trespass claims with prejudice to the extent the claims rely on those allegations.

### B.  Vicarious Liability

An individual must meet two requirements before a court will consider the person an agent of another: (1) the individual is subject to another's control; and (2) the individual acts on behalf of the other person. *Vaughn v. First Transit, Inc.*, 346 Or. 128, 136, 206 P.3d 181 (2009). Moreover, "a principal's liability for the torts of its agents varies based upon the type of agent." *Id.* at 137. "A principal is liable for all torts committed by its employees while acting within the scope of their employment." *Id.* Similarly, a principal is liable for the actions of a non-employee agent "only if those actions are within the actual or apparent authorization of the principal." *Jensen v. Medley*, 336 Or. 222, 231, 82 P.3d 149 (2003); *see also Brown v. Far West Fed. Sav. & Loan Assoc.*, 66 Or. App. 387, 391, 674 P.2d 1183 (1984) (plaintiff could not establish bank was liable for alleged battery committed by police officers where the bank merely called the officers

Page 10 – FINDINGS AND RECOMMENDATION

to the scene and the officers' subsequent actions "resulted from their reliance on their personal judgment and discretion").

> Actual authority may be express or implied. When a principal explicitly authorizes the agent to perform certain acts, the agent has express authority. However, most actual authority is implied: a principal implicitly permits the agent to do those things that are "reasonably necessary" for carrying out the agent's express authority. In contrast, a principal also may be bound by actions taken that are "completely outside" of the agent's actual authority, if the principal allows the agent to appear to have the authority to bind the principal. Such a circumstance is called "apparent authority."
>
> For a principal to be bound by an agent's action, the principal must take some affirmative step, either to grant the agent authority or to create the appearance of authority. An agent's actions, standing alone and without some action by the principal, cannot create authority to bind the principal.

*Taylor v. Ramsay-Gerding Constr. Co.*, 345 Or. 403, 410, 196 P.3d 532 (2008) (citations omitted).

Here, plaintiffs' trespass, outrageous conduct, false imprisonment and battery claims all arise out of actions by unidentified men in law enforcement uniforms. The complaint alleges that the men acted on behalf of the defendants but support that allegation with only the assertion that one of the men believed he represented the property owner and obtained information that only the owner would know. Plaintiffs do not allege that the men were employees of the defendants. Moreover, plaintiffs do not allege facts indicating that the defendants authorized the men to take they actions that they did or took some action so the men appeared to act on their behalf. The court should therefore dismiss plaintiffs' trespass, outrageous conduct, false imprisonment and battery claims, with leave to amend. Upon amendment, plaintiffs must truthfully allege facts that suggest that the men who engaged in the wrongful acts were employees of the defendants or acted as the defendants' agents.

### C.    Abuse of Process

Abuse of process is the perversion of a process that is regular on its face to a purpose for

which the process is not intended. *Larsen v. Credit Bureau*, 279 Or. 405, 408, 568 P.2d 657 (1977). Thus, "to plead a claim for abuse of process, a plaintiff must allege some ulterior purpose, unrelated to the process, and a willful act in the use of the process that is not proper in the regular conduct of the proceeding." *Pfaendler v. Bruce*, 195 Or. App. 561, 572, 98 P.3d 1146 (2004). "The improper purpose usually takes the form of coercion to obtain a collateral advantage . . . by the use of the process as a threat or a club." *Hartley v. Oregon*, 77 Or. App. 517, 522, 713 P.2d 1060 (1986) (citation omitted). Thus, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Larsen*, 279 Or. at 408 (holding defendant was entitled to a directed verdict on plaintiff's abuse of process claim where the plaintiff presented no evidence that defendant sought to obtain a collateral advantage) (citation omitted).

Here, the complaint alleges that U.S. Bank used legal process for an improper purpose but does not include facts that support that allegation. The allegation does not indicate that U.S. Bank initiated the FED proceeding for any purpose other than its authorized conclusion, to obtain possession of the property. *See Fry v. D. H. Overmyer Co.*, 269 Or. 281, 300, 525 P.2d 140 (1974) ("An FED proceeding provid[es] an orderly means of obtaining possession of real property without a breach of the peace.") Thus, plaintiffs have failed to state a claim for abuse of process. The court should therefore dismiss plaintiffs' abuse of process claim with leave to amend. Upon amendment, plaintiffs must truthfully allege facts indicating that U.S. Bank initiated the FED proceeding to obtain something from them other than possession of the property. Plaintiffs, however, may not challenge the legality of the 90-day notice to vacate because such claims are precluded, as explained above.

Page 12 – FINDINGS AND RECOMMENDATION

D.     **Willful and Wanton Misconduct**

Oregon courts define "wanton misconduct" as an intentional act or omission when one knows or has reason to know facts "which would lead a reasonable [person] to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." *Taylor v. Lawrence*, 229 Or. 259, 264, 366 P.2d 735 (1961) (citation omitted); *Williamson v. McKenna*, 223 Or. 366, 396, 354 P.2d 56 (1960) ("The conduct must involve an easily perceptible danger of substantial bodily harm or death and the chance that it will so result must be great.") (citation omitted); *see also Lawhead v. Woodpecker Truck & Equip., Inc.*, 267 Or. 383, 388, 517 P.2d 283 (1973) (affirming directed verdict on wanton misconduct claim because defendant's decision to allow the plaintiff to ride in the cab of truck while it was towed did not involve a high degree of probability that substantial harm would result); *Monnet v. Ullman*, 129 Or. 44, 57, 276 P. 244 (1929) (remanding for nonsuit on wanton misconduct claim where evidence showed that driver merely disobeyed traffic laws and where no evidence indicated that the defendants authorized the driver to carry passengers).

Here, the complaint contains no allegation that the defendants created an unreasonable risk of bodily harm in circumstances where a reasonable person would know substantial harm would result. In fact, the amended complaint alleges that the defendants' wanton misconduct caused "monetary and emotional injury," but does not include any allegations related to bodily harm. The court should therefore grant defendants' motion to dismiss plaintiffs' willful and wanton misconduct claim with leave for plaintiffs to amend. Upon amendment, plaintiffs may sustain a willful or wanton misconduct claim if they can truthfully allege facts that suggest that the defendants acted in circumstances that demonstrated an unreasonable risk of bodily harm and

Page 13 – FINDINGS AND RECOMMENDATION

that it was highly probable such harm would occur. In addition, the amendment cannot challenge the legality of the 90-day notice to vacate and must address the deficiencies in allegations concerning vicarious liability, as set forth above.

E.     **Trespass**

Oregon law does not recognize a claim for trespass to persons. *See e.g., Martin v. Union P. R. Co.*, 256 Or. 563, 565, 474 P.2d 739 (1970) ("A trespass arises when there is an intrusion upon the land of another which invades the possessor's interest in the exclusive possession of his land.") Plaintiffs, however, argue that their trespass claims arise from trespass to themselves, not trespass to land. Thus, it appears that plaintiffs can allege no set of facts that would entitle them to relief on their trespass causes of action. The court should accordingly dismiss the plaintiffs' trespass causes of action with prejudice.

F.     **"Outrageous Conduct"**

When a plaintiff labels a claim as "outrageous conduct," the court may construe it as a claim for intentional infliction of emotional distress. *See, e.g., Otterness v. City of Waldport*, 130 Or. App. 550, 556, 883 P.2d 228 (1994). "To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that (1) the defendant intended to inflict severe emotional distress on the plaintiff," (2) the defendant's acts caused the plaintiff's severe emotional distress, and (3) "the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *Sheets v. Knight*, 308 Or. 220, 236, 779 P.2d 1000 (1989). "A trial court plays a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a jury question on liability." *House v. Hicks*, 218 Or. App. 348, 358, 179 P.3d 730 (2008); *see also Pakos v. Clark*, 253 Or. 113, 132, 453 P.2d 682 (1969) ("It

Page 14 -- FINDINGS AND RECOMMENDATION

was for the trial court to determine, in the first instance, whether the defendants' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.")

### 1. Intent

"In pleading a claim for intentional infliction of emotional distress, the plaintiff must allege facts showing that the defendant intended to cause . . . severe emotional distress or knew that such distress was certain or substantially certain to result." *Richer v. Poisson*, 137 Or. App. 157, 160, 903 P.2d 932 (1995). Here, the amended complaint alleges that the defendants knew that the actions of the men in uniform would cause plaintiffs to suffer emotional damages but, as explained above, does not include any facts that support the defendants' vicarious liability for the conduct of the men. Moreover, the complaint does not allege that the defendants intended to inflict severe emotional distress or knew such distress would result.

### 2. Severe Emotional Distress

"Emotional distress includes mental suffering, mental anguish, mental or nervous shock, fright, and all highly unpleasant mental or emotional reactions. . . . The emotional distress must be substantial or enduring, as distinguished from trivial or transitory." *Gunter v. Guardian Press Found., Inc.*, No. 02-6254, 2006 U.S. Dist. LEXIS 34691, at *12 (D. Or. Mar. 28, 2006). Here, the complaint alleges that the plaintiffs suffered "emotional damages" and were "seriously distressed" and "deeply upset." It does not, however, include any facts indicating that their alleged distress was enduring.

### 3. Extreme and Outrageous Conduct

Courts conduct a "fact-specific" inquiry to determine whether conduct is extreme of outrageous, *House*, 218 Or. App. at 358. The court first inquires whether defendant has a special relationship to the plaintiff that "imposes on the defendant a greater obligation to refrain from

Page 15 – FINDINGS AND RECOMMENDATION

subjecting the victim to abuse, fright, or shock than would be true in arm's-length encounters among strangers." *Id.* at 360 (citation omitted). Other factors include whether the defendant acted to "advance an unlawful or otherwise illegitimate end" or "to take advantage of an unusually vulnerable individual." *Id.* at 360, 365 n.6. The court also considers the setting in which the conduct occurs, for example, whether it occurred in a public venue or in an employment context. *Id.* at 360. "Conduct that is merely rude, boorish, tyrannical, churlish and mean [is insufficient to be actionable, [and]...insults, harsh or intimidating words, or rude behavior ordinarily [do not] result in liability even when intended to cause distress." *Dawson v. Entek Int'l*, 662 F. Supp. 2d 1277, 1291 (D. Or. 2009) (quoting *Watte v. Edgar Maeyens, Jr.*, 112 Or. App. 234, 239, 828 P.2d 479 (1992)).

Here, even assuming that plaintiffs can allege facts suggesting that the defendants are vicariously liable for the actions of the men in uniform, they have failed to allege facts that suggest the men engaged in outrageous conduct. Plaintiffs assert that the men posed as police officers, that one man pounded on doors and knocked on windows and that the other man threatened them with arrest, touched Ted Dauven and ordered him to remain on the porch. Nothing suggests that the defendants have a relationship to the plaintiffs beyond merely an arms-length dealings concerning possession of the property. Plaintiffs allege that defendants acted out of retaliation for plaintiffs' refusal to vacate after a fraudulent 90-day notice, but as noted above, that claim is precluded by the state court judgment in the FED action. Moreover, nothing indicates that the defendants were aware that the plaintiffs were particularly vulnerable.

### 4. Summary

Plaintiffs have not alleged sufficient facts to support any element of their intentional infliction of emotional distress claim. The court should therefore dismiss the claim with leave to

Page 16 – FINDINGS AND RECOMMENDATION

amend. Upon amendment, plaintiffs must in good faith allege facts that indicate the defendants intended to inflict emotional distress or knew such distress would result, that plaintiffs suffered enduring or significant distress, and that the defendants' actions went beyond "the farthest reaches of socially tolerable behavior." *House*, 218 Or. App. at 358. In addition, plaintiffs must sufficiently allege facts to support the defendants' vicarious liability for the conduct of the men in uniform and must eliminate allegations that challenge the legality of the 90-day notice to vacate.

### G. False Imprisonment and Battery

Defendants argue that plaintiffs failed to allege facts that suggest that the men in uniform were not law enforcement officers and thus have failed to allege facts to suggest that their conduct was unlawful. The complaint alleges that the men impersonated police officers and that one refused to show identification when asked. While I find the allegations improbable, I must treat them as true and construe them in the light most favorable to the nonmoving party. I therefore decline to find that the men were, in fact, police officers. Rather, I find that the false imprisonment and battery claims fail to allege sufficient facts to suggest that the defendants are vicariously liable for the conduct of the men. The court should therefore dismiss the false imprisonment and battery claims with leave to amend. Upon amendment, plaintiffs must sufficiently allege facts to support the defendants' vicarious liability.

### CONCLUSION

The court should grant defendants' motion to dismiss for lack of subject matter jurisdiction (#21) with leave to amend to correct the defects in the jurisdictional allegations. The court should grant defendants' motion to strike (#21). The court should grant defendants' motion to dismiss for failure to state a claim and (#21) dismiss the plaintiffs' trespass causes of action (Third and Fourth Causes of Action) with prejudice. The court should dismiss plaintiffs'

Page 17 – FINDINGS AND RECOMMENDATION

remaining claims with leave to amend, within thirty days, in a manner consistent with this opinion.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 7th day of June, 2010

_/s/ Paul Papak_
Honorable Paul Papak
U.S. Magistrate Judge