FILED

NOV 0 8 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BARBARA G. DAUVEN, et al.,

       Plaintiff,

                                CV. 09-1471-PK

                                FINDINGS AND

v.                           RECOMMENDATION

U.S. BANK NATIONAL ASSOCIATION,
et al.,

       Defendant.

_____

PAPAK, Judge:

       Plaintiffs Barbara Dauven, Ted Dauven and their daughter, Christiana Dauven, appearing

*pro se*, file this action arising out of a dispute over property that the Dauvens lived in as tenants.

The action alleges various state law claims against defendants U.S. Bancorp, U.S. Bank National

Association (collectively, U.S. Bank) and Wells Fargo. Now before the court is defendants'

motion to dismiss or alternative motion to strike (#32) and plaintiffs' motion for extension of

Page 1 - FINDINGS AND RECOMMENDATION

time (#35), which I construe as a motion for stay.  For the reasons discussed below, the defendants' motion should be granted in part and denied in part, and the plaintiffs' motion should be denied.

## BACKGROUND

### I.    Procedural History

Many of the issues now before the court have been previously addressed in this case. Shortly after the Dauvens first filed this action, this court issued an order to show cause, requiring that the plaintiffs address the court's subject matter jurisdiction.  (Order to Show Cause, #9.)  The Dauvens timely amended their complaint alleging diversity as the basis for this court's jurisdiction.  Defendants therefore moved to dismiss the Dauven's amended complaint and strike the Dauven's claim for attorney's fees.  In part, defendants argued that the Dauvens failed to establish diversity jurisdiction because they failed to allege that they were U.S. citizens and citizens of Oregon.  Defendants also argued that the Dauvens failed to plead sufficient facts to state claims for relief on any of their common law causes of action for abuse of process, willful and wanton misconduct, trespass, outrageous conduct, battery, and false imprisonment.

On June 7, 2010, this court issued a Findings and Recommendation (#28) agreeing with many of defendants' arguments and indicating the court should dismiss plaintiffs' complaint and strike plaintiffs' prayer relief for attorney's fees.  This court's Findings and Recommendation, however, recommended granting plaintiffs leave to amend their complaint with regard to many of their claims and gave plaintiffs explicit instructions concerning how they were to amend in order to cure the identified defects.  The district court adopted this court's Findings and Recommendations and plaintiffs then filed their second amended complaint (#31).  Defendants

Page 2 - FINDINGS AND RECOMMENDATION

now move again to dismiss the complaint or alternatively strike plaintiffs' attorney's fee claim, arguing that plaintiffs' have failed to fix their defective pleadings in the manner previously suggested by this court.

## II.    Factual History

This action concerns a dispute over property in Lake Oswego, Oregon, where the Dauvens lived as tenants since 2006. The property owner failed to pay the mortgage and U.S. Bank, the lender, foreclosed in July 2009.[1] (Sec. Am. Compl., #31, at ¶ 51.) On July 3, 2009, an individual working for a company purportedly representing the owner of the property served the Dauvens with a 90-day notice stating that they were evicted from the property. *Id.* at ¶53. The Dauvens allege that, as long-term tenants, they had a "priority to purchase" the property under Oregon law and expressed their desire to buy it.[2] *Id.*

Efforts to evict the Dauvens from the property intensified. On July 8, 2009 the Dauvens were served with another 90-day notice demanding they vacate. *Id.* at ¶57. In August, 2009, the Dauvens received yet another 90-day notice to vacate in the mail. *Id.* at ¶59. The Dauvens allege that August 90-day notice misled them into believing that the property had been sold at auction to a third party and that they could no longer purchase the property. *Id.* at ¶ 60. In November, 2009, the Dauvens sent a letter to the attorney from whom they received the August 90-day notice stating that the notice was fraudulent. *Id.* at 61. The Dauvens' letter informed the attorney that the Dauvens knew the property had not been sold at auction, that they wished to

---

[1] Wells Fargo acted as the loan servicer *Id.* at ¶ 4.

[2] When the owner offered to sell the property to the Dauvens in June, 2008 , the Dauvens rejected the offer because the price was too high. *Id.* at ¶43.

purchase the property, and that any attempt to evict the Dauvens would lead to legal action. *Id.*

The plaintiffs' second amended complaint alleges that, in retaliation for the Dauvens' letter accusing defendants of fraud, defendants "caused, induced, hired, employed, and/or facilitated" a man impersonating a peace officer to "intrude on the . . . property" on two separate occasions in November, 2009. *Id.* at 62. The man was dressed in a blue police type uniform and drove a dark vehicle with a flashing red light on the dashboard. *Id.* On the first occasion, November 16, 2009, the man beat violently on the doors of the house, apparently trying to "force his way into the residence. . . ." *Id.* On the second occasion, November 23, 2009, the man beat on the doors, walked around the house, looked in the windows, and then resumed beating on the doors, but never entered the house. *Id.* at 63. The second incident lasted over 20 minutes. *Id.* The impersonator allegedly terrified Christiana Dauven, who is chronically ill and was home alone on both occasions. *Id.* at 62.

The Dauvens also allege that on the evening of December 1, 2009, the defendants "caused, induced, hired, employed, and/or facilitated" another man impersonating a peace officer to visit the property in retaliation for the Dauvens' letter and subsequent refusal to vacate. *Id.* at 65. The man was dressed in a police "swat-type" uniform driving a dark truck with a red flashing light on the dashboard. *Id.* The man walked to the door and "stated that he was a State Officer ... and that local police would act as his back-up if [the Dauvens] did not comply with his demands." *Id.* The complaint describes that the man "behaved like a Nazi stormtrooper" and threatened plaintiffs with arrest and the use of physical force if they did not follow his orders. *Id.* The man refused to show a badge or identify himself. *Id.* at 66. The complaint alleges that when plaintiff Ted Dauven walked down the driveway to get the license plate of the man's truck, the

Page 4 - FINDINGS AND RECOMMENDATION

man "quickly rushed approximately 6 feet to impede Plaintiff's movement, actually touched him, and ordered him back onto the porch." *Id.* Through conversation with the man, plaintiff Barbara Dauven learned that he and the previous police impersonator represented the owners of the property who were demanding that the Dauvens vacate. *Id.* at 67. The complaint alleges that the police impersonators "functioned at the direction and benefit of one or more of Defendants" and "were establishing a scenario whereby neighbors and passerby would assume that [the Dauvens] are the type of individuals who commit actions that result in visits in their driveways by peace officers with flashing red lights." *Id.*

In December, 2009, U.S. Bank initiated a forcible entry and detainer (FED) proceeding against the Dauvens and state court entered judgment in favor of U.S. Bank. *Id.* at ¶¶68, 76.

## III.    Plaintiffs' Second Amended Complaint

The Dauvens now pursue claims for abuse of process (First Cause of Action)[3] and "willful and wanton misconduct" (Second and Seventh Causes of Action) arising out of the FED proceeding. Concerning abuse of process, the complaint alleges that U.S. Bank and Wells Fargo "have used processes, not for their legal purposes, but to accomplish purposes for which the processes were not designed." (Sec. Am. Compl. at ¶ 82.) The Dauvens identify the offending processes, including defendants' purchase of an overpriced property, refusal to deal with the Dauvens, illegal eviction threats and intrusions involving peace officer impersonators, contrivance of a defective and fraudulent eviction notice and fraudulent trustee's deed, employment of the notice and deed in the FED action, and improper service of the FED

---

[3] The complaint lists causes of action, as opposed to claims for relief. I use the complaint's terminology for the sake of clarity.

Page 5 - FINDINGS AND RECOMMENDATION

summons and complaint. *Id.* The Dauvens allege that the illegal eviction threats and intrusions by police impersonators were "in order to intimidate and eliminate Plaintiffs as obstacles to Defendants' scheme, and to conceal Defendants' irregular and illegal actions . . . ." *Id.* at ¶82.

Regarding the Dauven's first willful and wanton misconduct claim, the complaint alleges the same range of misconduct that is described in the abuse of process claim, adding that defendants "owed Plaintiffs a legal duty and standard of care in their dealings and actions regarding Plaintiffs" and that their actions breached that duty "with malicious intent to interfere with Plaintiffs' rights and injure Plaintiffs economically and emotionally." *Id.* at ¶¶87, 89. The complaint alleges that "Defendants knew, or should have known, that their actions would cause Plaintiffs to suffer monetary and extreme emotional injuries" and that plaintiffs have suffered and will continue to suffer monetary and emotional injury. . . ." *Id.* at ¶¶90, 91. In contrast, the Dauven's other willful and wanton misconduct claim focuses only on the defendants' duty to provide a valid 90-day notice to vacate and subsequent delivery of an invalid and fraudulent notice. *Id.* at ¶¶120-122.

The Dauvens also pursue claims for outrageous conduct and intentional infliction of emotional distress (Third and Fourth Causes of Action) against defendants arising out of defendants' use of "irregular and illegal means" to prevent the property from being sold at a foreclosure sale, to preclude the Dauvens from purchasing the property, and to force the Dauvens to vacate the property. *Id.* at ¶¶94-96, 102-104. Both claims allege that defendants' actions amounted to intentional infliction of emotional distress on plaintiffs and that those actions were "outrageous, intolerable, and so extreme as to exceed the bounds of decency and socially tolerable acts." *Id.* at ¶¶97, 105.

Page 6 - FINDINGS AND RECOMMENDATION

Finally, Ted Dauven pursues claims for false imprisonment and battery (Fifth and Sixth

Causes of Action) against all defendants arising out of an altercation that took place during the

December, 2009 demand to vacate, where the man dressed as a peace officer stopped Dauven by

touching him and ordered him to remain on the porch. *Id.* at ¶ 66. Dauven alleges that the

defendants induced the man to impersonate a peace officer and "deprive [Dauven] of his personal

liberty by controlling his free movement by threat of arrest and bodily injury, and use of physical

force." *Id.* at 109.


## LEGAL STANDARDS

### I.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) can be "either facial

or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Under either form of attack,

courts presume that a case "lies outside [its] limited jurisdiction, and the burden of establishing

the contrary rests upon the party asserting jurisdiction." *Assoc. of Am. Med. Colleges v. United

States*, 217 F.3d 770, 778-779 (9th Cir. 2000) (citation omitted). "In a facial attack, the

challenger asserts that the allegations contained in a complaint are insufficient on their face to

invoke federal jurisdiction." *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual

challenge, "a court may look beyond the complaint to matters of public record without having to

convert the motion into one for summary judgment. . . It also need not presume the truthfulness

of the plaintiffs' allegations." *White*, 227 F.3d at 1242 (citations omitted).

"Defective allegations of jurisdiction may be amended, upon terms, in trial or appellate

courts." 28 U.S.C. § 1653. "Dismissal without leave to amend is improper unless it is clear,

upon de novo review, that the complaint could not be saved by amendment." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n.6 (9th Cir. 2002).

## II.    Motion to Strike

Federal Civil Procedure Rule 12(f) provides that the district courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" on their own initiative or pursuant to a party's motion. Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). The disposition of a motion to strike is within the discretion of the district court. *See Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990).

## III.    Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), citing *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

In ruling on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's

allegations of material fact as true and construe them in the light most favorable to the

nonmoving party. *Keams v. Tempe Tech. Inst.*, 39 F.3d 222, 224 (9th Cir. 1994). Moreover, the

"court may generally consider only allegations contained in the pleadings, exhibits attached to the

complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756,

763 (9th Cir. 2007). In cases involving a plaintiff proceeding *pro se*, courts construe the

pleadings liberally and afford the plaintiff the benefit of any doubt. *See Karim-Panahi v. Los

Angeles Police Dep't.*, 839 F.2d 621, 623 (9th Cir. 1988). Thus, a *pro se* litigant is entitled to

notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's

deficiencies cannot be cured by amendment. *Id.* at 623-624.


## DISCUSSION

I.    **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

"A party seeking to invoke diversity jurisdiction should be able to allege affirmatively the

actual citizenship of the relevant parties." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857

(9th Cir. 2001). A person is a "citizen of a state" for purposes of diversity jurisdiction if the

person is a citizen of the United States and the state is his or her domicile, or permanent home,

"where [the person] resides with the intention to remain or to which [he or] she intends to

return." *Id.* Thus, an allegation that a party is a resident of a state is insufficient to confer

diversity jurisdiction because  "a person residing in a given state is not necessarily domiciled

there, and thus is not necessarily a citizen of that state." *Id.*

In a previous Findings and Recommendation, this court found that plaintiffs' amended

complaint should have been dismissed for lack of subject matter jurisdiction, but recommended

granting leave to amend for plaintiffs to correct the defects in their jurisdictional allegations. This court specifically instructed plaintiffs to allege upon amendment that they are citizens of the United States and are domiciled in Oregon or any other state diverse from defendants. (F&R, #28, at 8-9.) Despite that explicit guidance, plaintiffs have again failed to plead diversity jurisdiction. Plaintiffs' second amended complaint still states that plaintiffs reside in Oregon, but fails to allege that plaintiffs are citizens of the United States and are domiciled in Oregon. In briefing, the plaintiffs contend that they are "long-term residents of Oregon, [] lifetime citizens of the United States of America, and . . . they may , therefore, be considered citizens of the State of Oregon." (Pl.'s Resp., #38, at 2.) This logic is incorrect; plaintiffs have not alleged citizenship in the state of Oregon merely because they are long-term residents here. To allege citizenship in the state of Oregon, plaintiffs must allege that Oregon is their domicile, that is, where they reside with the intention to remain or the state to which they intend to return. Therefore, plaintiffs have failed to allege a basis for this court's subject matter jurisdiction and defendants' motion to dismiss for lack of subject matter jurisdiction should be granted.

Because plaintiffs proceed *pro se,* I must give them leave to amend their complaint "unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Karim-Panahi,* 839 F.2d at 623, *citing Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987). Given the allegations in this second amended complaint that plaintiffs have established "a lifestyle and important friendships" in Oregon, it is not absolutely clear that plaintiffs cannot amend their complaint to allege that they are domiciled in Oregon. (Sec. Am. Compl., #31, ¶2.) Thus, the court should grant plaintiffs leave to amend their complaint. Upon amendment, plaintiffs should truthfully allege that they are citizens of the United States and are

Page 10 - FINDINGS AND RECOMMENDATION

domiciled in Oregon or any other state diverse from defendants.

## II.      Motion to Strike

"A motion to strike may be used to strike the prayer for relief where the relief sought is unavailable as a matter of law." *Chouinard v. Grape Expectations, Inc.*, No. 08-806, 2009 U.S. Dist. LEXIS 2569, at *3 (D. Or. Jan. 12, 2009). This court previously recommended granting defendants' motion to strike plaintiffs' claim for attorney's fees, because attorney fees are not available for the common law causes of action alleged by plaintiffs. (F&R, #28, at 9.) Nevertheless, plaintiffs' prayer for relief in their second amended complaint again seeks attorney fees. Since plaintiffs have again plead only common law causes of action that do not provide for an award of fees, the court should grant defendants' motion to strike plaintiffs' claim for attorney fees.

## III.     Motion to Dismiss for Failure to State a Claim

### A.      Claim Preclusion

This court previously found that plaintiffs' claims for abuse of process and willful and wanton misconduct were precluded because they relied on allegations relating to the rightful ownership of the property and the legality of the 90-notice to vacate received by plaintiffs, which plaintiffs already had a chance to challenge in their defense to the forcible entry and detainer (FED) action. (F&R, #28, at 10.) Accordingly, this court recommended dismissing the abuse of process and wanton and willful misconduct claims with prejudice to the extent that the claims relied on allegations regarding ownership of the property and notice to vacate. *Id.* at 10. Here, plaintiffs' Seventh Cause of Action for willful and wanton misconduct is exclusively based on allegations concerning the 90-day notice, and must therefore be dismissed with prejudice

consistent with this court's prior Finding and Recommendation. Moreover, plaintiffs' First and Second Causes of Action (abuse of process, willful and wanton misconduct) also include allegations concerning ownership of the property and the 90-day notice. Similarly, to the extent that the plaintiffs' First and Second Causes of Action rely on these allegations, those claims should be dismissed with prejudice.

Plaintiffs, however, also allege conduct forming the basis for their First and Second Causes of Action that they did not have a chance to address in their defense to the FED action. Specifically, plaintiffs allege that defendants sent men impersonating peace officers to the property to intimidate them in retaliation for their written complaints that defendants committed fraud. Thus, plaintiffs' abuse of process claim (First Cause of Action) and willful and wanton misconduct claim (Second Cause of Action) are not precluded to the extent that they rely on allegations concerning defendants' efforts to intimidate plaintiffs through the actions of peace officer impersonators.

**B.    Vicarious Liability**

All of plaintiffs claims – abuse of process, willful and wanton misconduct, outrageous conduct, intentional infliction of emotional distress, false imprisonment, and battery – derive from three occasions when unidentified men in law enforcement uniforms entered on the property and intimidated the Dauvens. For the plaintiffs to properly state any of these claims against defendants, they must therefore allege that defendants are vicariously liable for the actions of those men.

An individual must meet two requirements before a court will consider the person an agent of another: (1) the individual is subject to another's control; and (2) the individual acts on

Page 12 - FINDINGS AND RECOMMENDATION

behalf of the other person. *Vaughn v. First Transit, Inc.*, 206 P.3d 181, 187 (Or. 2009).

Moreover, "a principal's liability for the torts of its agents varies based upon the type of agent."

*Id.* "A principal is liable for all torts committed by its employees while acting within the scope

of their employment." *Id.* Similarly, a principal is liable for the actions of a non-employee agent

"only if those actions are within the actual or apparent authorization of the principal." *Jensen v.*

*Medley*, 82 P.3d 149, 154 (Or. 2003); *see also Brown v. Far West Fed. Sav. & Loan Assoc.*, 674

P.2d 1183, 1187 (Or. Ct. App. 1984) (plaintiff could not establish bank was liable for alleged

battery committed by police officers where the bank merely called the officers to the scene and

the officers' subsequent actions "resulted from their reliance on their personal judgment and

discretion").

  In this court's previous Findings and Recommendation, the court recommended

dismissing without prejudice plaintiffs' outrageous conduct, false imprisonment, and battery

claims, since plaintiffs failed to allege facts indicating that the defendants were vicariously liable

for the actions of the uniformed men. (F&R, #28, at 11.) This court then explicitly instructed the

plaintiffs to allege facts suggesting that the unidentified men were either employees or agents of

the defendants. *Id.* at 11. In their second amended complaint, plaintiffs now allege that

defendants "caused, induced, hired, employed, and/or facilitated" the men dressed as law

enforcement officers to enter the property. (Sec. Am. Compl., #31, ¶¶ 62, 65.) This statement

does not clarify whether the plaintiffs allege the uniformed men were employees of defendants

acting within the scope of their employment or merely non-employee agents acting with the

actual or apparent authorization of the defendants. Consequently, I analyze plaintiffs' allegations

under both standards and determine that plaintiffs allege sufficient facts in their second amended

Page 13 - FINDINGS AND RECOMMENDATION

complain to state claims based on vicarious liability under either standard.

## 1.    Scope of Employment

In deciding whether an employee acts within the scope of her employment, Oregon courts consider the following factors: (1) "whether the act in question is of a kind the employee was hired to perform;" (2) "whether the act occurred substantially within the authorized limits of time and space;" and (3) "whether the employee was motivated, at least in part, by a purpose to serve the employer." *Stanfield v. Laccoarce*, 588 P.2d 1271, 1274 (Or. 1978). Whether an employee acts within the scope of employment depends on whether the employee "was performing a service for the [employer] in furtherance of the [employer's] business, not whether it was done in exact observance of detail prescribed by his employer." *Banaitis v. Mitsubishi Bank*, 879 P.2d 1288, 1302 (Or. Ct. App. 1994) (citations and quotations omitted). The question of whether an employee has acted within the scope of her employment at any given time is normally a question for the jury, except in cases where only one reasonable conclusion can be drawn from the facts. *Id.* at 1274–75 (Or. 1978).

If I construe plaintiffs' complaint as alleging that the peace officer impersonators were employees of defendants, plaintiffs allege sufficient facts to suggest that the impersonators acted within the scope of their employment. The alleged conduct of the first impersonator, beating on the door and walking around the house, is consistent with his being hired by defendants to inspect the property and potentially serve the FED action summons and complaint. Moreover, the alleged conduct of the latter impersonator, who visited on December 1, 2009, also could have been within the scope of his employment for defendants. Although much of that impersonator's conduct – identifying himself as a state police officer, threatening to arrest plaintiffs or use

Page 14 - FINDINGS AND RECOMMENDATION

physical force to restrain them, touching Ted Dauven, and ordering Dauven to remain on the

porch of the house -- would certainly violate any employers' instructions concerning examining a

foreclosed property, those actions nonetheless could have been performed in furtherance of

defendants' business interest in this case, securing possession of that property. *See Banaitis*, 879

P.2d at 1302 (even acts in "direct contravention" of employer's policies may be within the scope

of employment). Therefore, assuming the impersonators were employees of defendants,

plaintiffs have plead sufficient facts suggesting defendants were vicariously liable for the acts of

the impersonators.

### 2.    Actual or Apparent Authority

Similarly, if the men were not employees, plaintiffs have also alleged vicarious liability

by pleading facts suggesting that the men could have been non-employee employees acting under

the actual or apparent authority of defendants.    Oregon courts explain the types of actual or

apparent authority as follows:

> Actual authority may be express or implied. When a principal explicitly
> authorizes the agent to perform certain acts, the agent has express authority.
> However, most actual authority is implied: a principal implicitly permits the agent
> to do those things that are "reasonably necessary" for carrying out the agent's
> express authority.  In contrast, a principal also may be bound by actions taken that
> are "completely outside" of the agent's actual authority, if the principal allows the
> agent to appear to have the authority to bind the principal. Such a circumstance is
> called "apparent authority."
>
> For a principal to be bound by an agent's action, the principal must take some
> affirmative step, either to grant the agent authority or to create the appearance of
> authority. An agent's actions, standing alone and without some action by the
> principal, cannot create authority to bind the principal.

*Taylor v. Ramsay-Gerding Constr. Co.*, 196 P.3d 532, 536 (Or. 2008) (citations omitted).

Plaintiffs' allegation that defendants "caused, induced, hired, employed, and/or facilitated"

Page 15 - FINDINGS AND RECOMMENDATION

indicates that the defendants took some affirmative action making the men agents of the defendants, but does alone suggest that the men were acting under the actual authority (express or implied) or apparent authority of defendants when they committed the particular conduct forming the basis for plaintiffs' claims.

Nevertheless, other newly added allegations suffice to provide enough additional facts to suggest that the men acted with the implicit actual authority or apparent authority of defendants. The Dauvens allege that Barbara Dauven learned through conversation with the peace officer impersonator on December 1, 2009 that the men dressed in law enforcement clothing "represented the 'owner' of the [] property who was demanding that Plaintiffs vacate." *Id.* Further, the Dauvens allege that the man who appeared at the property on December 1, 2009 "was acting on erroneous information provided by the 'owner' and their representatives," including information that plaintiffs had lost their home to foreclosure and that plaintiffs had not responded to previous notices to vacate. *Id.* at ¶67. Thus, plaintiffs allege facts indicating that the men acted as the agents of the defendants in attempting to vacate the Dauvens from the property. As agents of the defendants with express authority to accomplish that goal, the men would have the implied actual authority to engage in reasonably necessary conduct, such as their conduct on the two occasions in November, 2009, when they visually inspecting the property and knocked loudly on the door. By contrast, plaintiffs allegations concerning the December 1, 2009 impersonator indicate his conduct went well beyond what was reasonably necessary to encourage the Dauvens to leave the property, and thus was not acting with implied actual authority of defendants.

Nevertheless, plaintiffs allege facts indicating that defendants created the appearance of

Page 16 - FINDINGS AND RECOMMENDATION

authority for the December impersonator even if they did not grant him actual authority to touch

or restrain Ted Dauven.  Apparent authority to do any particular act can be created "only by some

conduct of the principal which, when reasonably interpreted, causes a third party to believe that

the principal consents to have the apparent agent act for him on that matter." *Taylor*, 196 P.3d at

536.  Here, plaintiffs allege that the December impersonator "was aware of facts regarding the

latest threat of eviction and knew information that he could only have received through

Defendant U.S. Bank or Defendant U.S. Bank's attorney or Defendant Wells Fargo, or their

representatives." (Sec. Am. Compl., #31, ¶67).  Thus, the Dauvens essentially allege that

defendants told the December impersonator unique details of the Dauvens' situation, effectively

leading the plaintiffs to reasonably believe that the defendants consented to have the December

impersonator act on behalf of the defendants in regarding the property.  This type of allegation of

information flowing from the principal through the agent is sufficient to indicate that the agent

acted under apparent authority.  *See Taylor*, 196 P.3d at 536 ("information that has been

channeled through other sources can be used to support apparent authority, as long as that

information can be traced back to the principal.")  Consequently, plaintiffs have plead sufficient

facts to suggest that defendants are vicariously liable for the conduct of the December

impersonator while acting under the defendants' apparent authority.

**C.    Abuse of Process**

Abuse of process is the perversion of a "process that is regular on its face to a purpose for

which the process is not intended." *Clausen v. Carstens*, 730 P.2d 604, 608 (Or. Ct. App. 1986).

Thus, "to plead a claim for abuse of process, a plaintiff must allege some ulterior purpose,

unrelated to the process, and a willful act in the use of the process that is not proper in the regular

Page 17 - FINDINGS AND RECOMMENDATION

conduct of the proceeding." *Pfaendler v. Bruce*, 98 P.3d 1146, 1153 (Or. Ct. App. 2004).  "The improper purpose usually takes the form of coercion to obtain a collateral advantage . . . by the use of the process as a threat or a club." *Hartley v. Oregon*, 713 P.2d 1060, 1063 (Or. Ct. App. 1986) (citation omitted).  Thus, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Larsen v. Credit Bureau, Inc.*, 568 P.2d 657, 658 (Or. 1977) (holding defendant was entitled to a directed verdict on plaintiff's abuse of process claim where the plaintiff presented no evidence that defendant sought to obtain a collateral advantage) (citation omitted).

This court previously found that plaintiffs failed to state an abuse of process claim because they did not allege facts in their amended complaint indicating that U.S. Bank initiated the FED proceeding for any purpose other than to obtain possession of the property in question. (F&R, #28, at 12.)  Here, plaintiffs have alleged additional facts in their second amended complaint concerning defendants' purposes, but those allegations still do not state a claim for abuse of process.   The Dauvens newly allege that all defendants used "illegal eviction threats and intrusions involving peace office impersonators in order to intimidate and eliminate Plaintiffs as obstacles to Defendants' scheme, and to conceal Defendants' irregular and illegal actions . . . ."  (Sec. Amend. Compl., #31, ¶82.)  To the extent that the plaintiffs' allegation about "illegal eviction threats" refers to the allegedly invalid 90-day notice, the abuse of process claim is precluded, as described above.  Further, the other part of the allegation concerning "intrusions involving peace office impersonators" does not state a claim for abuse of process because the impersonator's conduct was not part of the FED proceeding, but rather, was completely extralegal.  Although defendants' conduct may be actionable under one of plaintiffs' other

Page 18 - FINDINGS AND RECOMMENDATION

theories, plaintiffs do not state a claim for abuse of process based on defendants' alleged police impersonation tactics.

### D.   Willful and Wanton Misconduct

Oregon courts define "wanton misconduct" as an intentional act or omission when one knows or has reason to know facts "which would lead a reasonable [person] to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." *Taylor v. Lawrence*, 366 P.2d 735, 738 (Or. 1961) (citation omitted); *Williamson v. McKenna*, 354 P.2d 56, 70 (Or. 1960) ("The conduct must involve an easily perceptible danger of substantial bodily harm or death and the chance that it will so result must be great.") (citation omitted).

This court previously recommended dismissing plaintiffs' willful and wanton misconduct claim with leave to amend, because plaintiffs alleged defendants' misconduct caused monetary and emotional injury, but failed to allege that defendants caused any bodily harm. (F&R, #28, at 13.)  Accordingly, this court instructed plaintiffs to allege facts suggesting that defendants acted in circumstances demonstrating an unreasonable risk of bodily harm and a high probability that such harm would occur. *Id.* at 13-14.  Plaintiffs, however, have not alleged such facts in their second amended complaint.  The only allegation involving bodily contact is plaintiffs' assertion that on December 1, 2009, the peace officer impersonator touched Ted Dauven and ordered him to stay on the porch. (Sec. Am. Compl., #31, ¶66.)  This allegation does not suggest the impersonator acted in a manner creating an unreasonable risk of bodily harm or a high probability that such harm would occur.  Moreover, plaintiffs allege only that defendants actions caused them monetary and emotional injuries, but no physical harm. *Id.* at ¶¶90, 91.  Because

Page 19 - FINDINGS AND RECOMMENDATION

plaintiffs have failed to allege facts necessary to state a claim for willful and wanton misconduct,

their Second Cause of Action should be dismissed.  Additionally, since this court's earlier

Findings and Recommendation gave plaintiffs notice of this deficiency and clear instructions on

how to overcome it, plaintiffs' failure to amend their complaint accordingly indicates that

granting further leave to amend would be futile.  Therefore, plaintiffs remaining willful and

wanton misconduct claim (Second Cause of Action) should be dismissed with prejudice.

### E.    Outrageous Conduct and Intentional Infliction of Emotional Distress

When a plaintiff labels a claim as "outrageous conduct," the court may construe it as a

claim for intentional infliction of emotional distress.  *See, e.g., Otterness v. City of Waldport*, 883

P.2d 228, 231 (Or. Ct. App. 1994).  To state a claim for intentional infliction of severe emotional

distress, a plaintiff must plead that: (1) the defendant intended to inflict severe emotional distress

on the plaintiff;" (2) the defendant's acts caused the plaintiff's severe emotional distress; and (3)

"the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable

conduct." *Sheets v. Knight*, 779 P.2d 1000, 1010 (Or. 1989).  "A trial court plays a gatekeeper

role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to

determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a

jury question on liability." *House v. Hicks*, 179 P.3d 730, 736 (Or. Ct. App. 2008); *see also*

*Pakos v. Clark*, 453 P.2d 682, 691 (Or. 1969) ("It was for the trial court to determine, in the first

instance, whether the defendants' conduct may reasonably be regarded as so extreme and

outrageous as to permit recovery.")

This court previously construed plaintiffs' outrageous conduct claim as a claim for

intentional infliction of emotional distress, but recommended dismissing that claim with leave to

Page 20 - FINDINGS AND RECOMMENDATION

amend so that plaintiffs' could allege facts sufficient to meet the elements of that cause of action. (F&R, #28, at 14-17.) Thus, in order to plead a claim for intentional infliction, this court specifically instructed plaintiffs to allege facts indicating that: (1) defendants intended to inflict emotional distress or knew such distress would result; (2) plaintiffs suffered enduring or significant distress; and (3) defendants' actions went beyond "the farthest reaches of socially tolerable behavior." *House*, 179 P.3d at 736.

In their second amended complaint, plaintiffs allege an outrageous conduct claim (Third Cause of Action) and an intentional infliction of emotional distress claim (Fourth Cause of Action), both employing identical language. Plaintiffs' outrageous conduct is duplicative and should be dismissed with prejudice. Plaintiffs' remaining claim for intentional infliction of emotional distress should also be dismissed because it does not state a claim for relief.

### 1.    Intent

A plaintiff properly pleads the intent element of intentional infliction of emotional distress by alleging either that the "defendant desired to inflict severe emotional distress" on the plaintiffs, or "that the defendant knew that such distress was substantially certain to result from a volitional act." *Babick v. Or. Arena Corp.*, 40 P.3d 1059, 1064 (Or. 2002), *citing McGanty v. Staudenraus*, 901 P.2d 841, 852 (Or. 1995). In *McGanty*, the seminal case on this issue, the Oregon Supreme Court reversed the trial court's dismissal of an intentional infliction claim where plaintiff alleged on the intent element only that "defendants' acts were intentional and that defendants 'knew or should have known' that their acts would cause severe emotional distress." *McGanty v. Staudenraus*, 901 P.2d 841, 853 (Or. 1995). Here, plaintiffs have alleged that defendants "employed irregular and illegal means to force Plaintiffs to vacate the [] property."

(Sec. Am. Compl., #31, ¶104.)  This allegation satisfies the first half of the requirement, that

plaintiffs allege defendants acts were intentional.  Moreover, plaintiffs allege that "Defendants

knew or should have known that such offensive behavior would result from such actions and

cause Plaintiffs to suffer emotional damages." *Id.* at ¶106.  This additional allegation is very

similar to the language used by the plaintiff in *McGanty* that the Oregon Supreme Court deemed

sufficient to state a claim.  Thus, the plaintiffs have properly alleged the intent element of an

intentional infliction of emotional distress claim.

### 2.    Severe Emotional Distress

"Emotional distress includes mental suffering, mental anguish, mental or nervous shock,

fright, and all highly unpleasant mental or emotional reactions. . . . The emotional distress must

be substantial or enduring, as distinguished from trivial or transitory." *Gunter v. Guardian Press

Found., Inc.,* No. 02-6254, 2006 U.S. Dist. LEXIS 34691, at \*12 (D. Or. Mar. 28, 2006).  In a

previous Finding and Recommendation, this court noted that plaintiffs' amended complaint was

deficient because it did not allege any facts indicating that the plaintiffs' alleged distress was

enduring.  Plaintiffs' second amended complaint again contains the same flaw.  The complaint

alleges that after the second intrusion by the peace office impersonator on November 23, 2009,

Ted and Barbara Dauven were "seriously distressed" and Christiana Dauven was "deeply upset."

(Sec. Am. Compl. #31, ¶64.)  Plaintiffs further allege that seven days later, on November 30,

2009, Christiana Dauven hid in her room in response to a knock at the door of the residence; the

knock turned out to be from her mother, Barbara Dauven, who couldn't reach her key. *Id.*  Both

Ted and Barbara Dauven were "deeply emotionally distressed" by the effects of the previous

intrusions on their daughter. *Id.*  Thus, plaintiffs only allege facts indicating the emotional

effects of the intrusions lasted at most seven days, but not necessarily longer. Such allegations do not suggest that plaintiffs' distress was enduring.

### 3.    Extreme and Outrageous Conduct

Courts conduct a "fact-specific" inquiry to determine whether conduct is extreme or outrageous. *House*, 179 P.3d at 737. The court first inquires whether defendant has a special relationship to the plaintiff that "imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's-length encounters among strangers." *Id.* (citation omitted). Other factors include whether the defendant acted to "advance an unlawful or otherwise illegitimate end" or "to take advantage of an unusually vulnerable individual." *Id.* at 737, 740 n.6. The court also considers the setting in which the conduct occurs, for example, whether it occurred in a public venue or in an employment context. *Id.* at 737. "Conduct that is merely rude, boorish, tyrannical, churlish and mean [is insufficient to be actionable, [and]…insults, harsh or intimidating words, or rude behavior ordinarily [do not] result in liability even when intended to cause distress." *Dawson v. Entek Int'l*, 662 F. Supp. 2d 1277, 1291 (D. Or. 2009) (quoting *Watte v. Edgar Maeyens, Jr.*, 828 P.2d 479, 481 (Or. Ct. App. 1992)).

This court found that plaintiffs' prior amended complaint failed to allege facts suggesting that the peace officer impersonators engaged in outrageous conduct. (F&R, #28, at 15-16.) Plaintiffs' second amended complaint is similarly deficient. Nothing in the complaint suggests that the defendants have a special relationship with the plaintiffs beyond the arms-length transaction concerning possession of the property and nothing indicates that the defendants were aware that the plaintiffs were particularly vulnerable.

Page 23 - FINDINGS AND RECOMMENDATION

### 4. Summary

Plaintiffs allege sufficient facts to support only the first of three required elements of their intentional infliction of emotional distress claim. The court should therefore dismiss the claim. Because this court's earlier Findings and Recommendation gave plaintiffs notice of the deficiencies in their complaint and specific guidance on how to properly plead their intentional infliction claim, plaintiffs' failure to conform their complaint indicates that granting further leave to amend would be futile. Therefore, plaintiffs' intentional infliction of emotional distress claim (Fourth Cause of Action) should be dismissed with prejudice.

### F. False Imprisonment and Battery

Although defendants argue that plaintiffs fail to state a claim for false imprisonment and battery, I disagree. Defendants contend that the Dauven's second amended complaint fails to allege facts indicating the defendants were vicariously liable for the conduct of the peace officer impersonator who touched and restrained Ted Dauven on December 1, 2009. As described above, however, I found that plaintiffs plead enough facts to suggest that the uniformed man who appeared on December 1, 2009 was either an employee of defendants acting within the scope of his employment or was a non-employee acting with the apparent authority of defendants. Consequently, plaintiffs have alleged facts supporting two plausible theories of vicarious liability for their false imprisonment and battery claims.

## IV. Motion for Stay

Although styled as a motion for extension of time pursuant to Fed. R. Civ. P. 6(b), plaintiffs' motion effectively seeks a stay of this court's proceedings until the conclusion of plaintiffs' state court appeal of the FED judgment. Plaintiffs contend that a resolution of the FED

appeal is essential to their resolution here. However, the outcome of this case is independent from the FED action; plaintiffs' claims are precluded to the extent that they rely on allegations concerning the FED action. Moreover, since I recommend dismissing all of plaintiffs' claims with prejudice except for false imprisonment and battery, any resolution of the FED appeal would not affect the plaintiffs' remaining viable claims. Accordingly, plaintiffs' motion for stay should be denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or alternative motion to strike (#32) should be granted in part and denied in part. The court should grant defendants' motion to dismiss for lack of subject matter jurisdiction (#32) with leave to amend to correct the defects in the jurisdictional allegations. Specifically, upon amendment, plaintiffs should truthfully allege that they are citizens of the United States and are domiciled in Oregon or any other state diverse from defendants. The court should grant defendants' motion to strike (#32) plaintiffs' claim for attorney's fees. The court should grant in part and deny in part defendants' motion to dismiss for failure to state a claim (#32). With respect to that motion, the court should dismiss the following claims with prejudice: abuse of process (First Cause of Action); willful and wanton misconduct (Second Cause of Action, Seventh Cause of Action); outrageous conduct (Third Cause of Action); and intentional infliction of emotional distress (Fourth Cause of Action). Plaintiffs' claims for false imprisonment (Fifth Cause of Action) and battery (Sixth Cause of Action) should not be dismissed. Finally, the court should deny plaintiffs' motion for extension of time (#35).

//

Page 25 - FINDINGS AND RECOMMENDATION

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this ⟨8th⟩ day of November, 2010.

Honorable Paul Papak
United States Magistrate Judge

Page 26 - FINDINGS AND RECOMMENDATION